# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **DAWN ROBINSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number |
| **v.** ) | **7:12-cv-3829-AKK** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Dawn Robinson brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the ALJ's decision is supported by substantial evidence. Thus, the court will **AFFIRM** the decision denying benefits.

### I. Procedural History

Robinson protectively filed her application for Title II disability insurance benefits and supplemental security income on October 26, 2010, alleging a disability onset date of January 1, 2010, (R. 136-137), due to the effects of neck

1

and back problems, anxiety, panic attacks and depression. (R. 165). After the SSA denied her application on December 1, 2010, (R. 38-39), Robinson requested a hearing. (R. 49-50). At the time of the hearing on May 8, 2012, Robinson was thirty-nine years old, (R. 21, 92), and had completed two years of college. (R. 165). Robinson has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. (R. 13).

The ALJ denied Robinson's claim on May 17, 2012, (R. 12-16), which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 13, 2012. (R. 1-6). Robinson then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin,* 849 F.2d at 1529 (quoting *Bloodsworth,* 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin,* 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb,* 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological,

3

or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Robinson met the insured status requirements of the Act through December 31, 2012. (R. 13). Then the ALJ found that Robinson had not engaged in substantial gainful activity since January 1, 2010, the alleged onset of her disability, and therefore met Step One. (R. 13). Next, the ALJ acknowledged Robinson's medically determinable impairments of Generalized Anxiety Disorder. *Id.* However, the ALJ concluded that Robinson did not satisfy Step Two because she "[did] not have a severe impairment or combination of impairments" because she "[did] not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work related activities for 12 consecutive months." (R. 13). After answering Step Two in the negative, the ALJ determined that Robinson "ha[d] not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision." (R. 16).

## V. Analysis

The court now turns to Robinson's contentions that the ALJ erred by (1) rejecting the opinion of. John R. Goff, Ph.D. and (2) finding that Robinson suffered from no severe impairments. Doc. 8 at 1. The court will examine each contention in turn.

**A. Dr. Goff's Opinion**

Robinson first contends that the ALJ erred by rejecting the psychological evaluation of Dr. Goff. Doc. 8 at 8. Robinson specifically contends that the ALJ failed to "cite sufficient reasons to reject Dr. Goff's opinion, particularly in light of his admission that Dr. Goff is a 'highly qualified expert in Social Security disability evaluation'" under 20 C.F.R. § 404.1527(f)(2)(i). Doc. 8 at 10. Dr. Goff conducted a psychological evaluation of Robinson at the request of her attorney on January 26, 2012. (R. 454). During the examination, Dr. Goff reviewed Robinson's medical records, observed Robinson's behavior and mental status, and administered the *Wechsler Adult Intelligence Scale-Fourth Edition* (WAIS-IV), which revealed a Full Scale IQ of 80. (R. 454-58). Based on his examination, Dr. Goff opined that Robinson "was able to understand, carry out, and follow simple and moderately complex instructions," found that "[Robinson's] difficulties arise in situations that are anxiety provoking," and diagnosed Robinson as having "Generalized anxiety disorder," "Panic disorder," and "Adjustment disorder with depressed mood." (R. 458). Dr. Goff concluded that "[Robinson's] medical and psychological problems interfere with her ability to deal with stressors and pressures of the workplace" and that Robinson's "psychological condition represents a severe impairment." (R. 458-59). Dr. Goff also completed a *Medical*

*Source Opinion Form (Mental)* indicating that Robinson had marked and extreme limitations in preforming several work-related mental activities. (R.460-61).

As a non-treating physician, Dr. Goff's opinion is not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2). Consequently, the ALJ had to consider several factors to determine the weight, if any, to give Dr. Goff's opinions. These factors include whether Dr. Goff presented medical evidence and explanation supporting his opinion, and whether his opinion is consistent with the record as a whole. *See* 20 C.F.R. § 416.927(c). Moreover, the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir.1983). Indeed, even a treating physician's opinions, which are entitled to more deference than those of Dr. Goff, may be rejected if the ALJ has "good cause." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997).

Here, after acknowledging Dr. Goff's qualification as a "highly qualified expert in Social Security disability evaluation," the ALJ considered these factors and afforded "little weight" to Dr. Goff's psychological evaluation. (R. 14-15). In reaching his decision, the ALJ provided multiple reasons that are supported by substantial evidence and constitute good cause for rejecting Dr. Goff's opinions. Specifically, because the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," *Bloodworth v. Heckler*, 703 F.2d 1233,

1240 (11th Cir. 1983), the ALJ properly considered that Dr. Goff's "assessment is longitudinally inconsistent with the record as a whole, and represents a one-time anomaly rather than a sharp and sudden decline in [Robinson's] condition." (R. 15). Additionally, the ALJ properly considered that Dr. Goff's evaluation was based on "only a single visit," (R.30), because "[g]enerally, [the ALJ] give[s] more weight to opinions from treating sources." 20 C.F.R.§§ 404.1527(c)(2), 416.927(c)(2). Accordingly, the ALJ properly relied on Robinson's treating physicians' medical records in finding that Dr. Goff's opinions based on a single evaluation were entitled to little weight. (R.15). As the ALJ observed, Robinson's treating physicians indicated that "[Robinson's] symptoms were only mild in nature" and "would not cause more than mild limitations in any area of functioning." (R. 15). In fact, progress notes from West Alabama Mental Health Center indicate that Robinson was making "moderate progress" and that she was able to manage her symptoms. (R. 416).

Next, the ALJ properly found that Dr. Goff's assessment was inconsistent with Robinson's work history because Robinson "worked for many years with her allegedly disabling condition." (R. 14-15); *see Lewis*, 125 F.3d at 1440 ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence.") (citation omitted); 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that

opinion."). Significantly, the ALJ noted that, "although [Robinson] was only working part-time at Taco Casa in 2011, she had a desire to increase her working hours" to increase her income. (R. 15).

The ALJ also properly considered that Dr. Goff's assessment is inconsistent with Robinson's ability to perform her regular activities of daily living and found that Robinson "preform[s] a full and complete day of activities and care." (R. 15). For example, the ALJ observed that

> [Robinson] works with her son with his homework and then prepares dinner for her family. She has no problems with her ability to care for personal care. She performs the housework, such as cleaning, ironing and doing the laundry. She can drive a vehicle, leave her house, and venture out by herself. She independently shops for clothes for her children and groceries for her household. The claimant can pay bills, count change, and handle a checking and savings account. She reported that she enjoys watching television, reading the newspaper and reading magazines. She indicated that she talks to her mother on the phone daily and even attends church occasionally. In a word, the claimant does perform a full and complete day of activities and care.

(R. 15). Finally, the ALJ considered gaps in Robinson's treatment for her allegedly disabling mental impairment, (R. 140), and observed that after Robinson sought treatment at West Alabama Mental Health Center from September 2010 until March 2011, the record shows no further treatment until she presented at Indian Rivers Mental Health Center on September 22, 2011, (R. 13-14). Good cause exists to reject a physician's opinion when the medical records showed infrequent

9

medical visits. *See Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 290 (11th Cir. 2009)

In a nutshell, the ALJ considered the factors set forth in the regulations and articulated "good cause" for giving Dr. Goff's opinions little weight. Based on the court's review of the record, substantial evidence supports the ALJ's finding.

## B. Severe Impairment

Robinson's final contention is that the ALJ erred in finding that she had no severe impairments even though "the evidence shows [Robinson's] anxiety and depression are severe impairments." Doc. 8 at 12. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). A claimant's mental impairments are evaluated based on how they impact four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Cuthbert v. Astrue*, 303 Fed. App'x 697, 699 (11th Cir. 2008) (quoting 20 C.F.R. § 404.1520a).[1] The regulations provide that if "the degree of [a claimant's] limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that your impairment(s) is not

---

[1] "When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more." 20 C.F.R. § 404.1520a-(c)(4).

severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ found that Robinson had only mild limitations in her activities of daily living and social functioning, no limitations in her concentration, persistence and pace, and no episodes of decompensation. (R. 14-15). Therefore, consistent with the regulations, the ALJ found "that there was no evidence suggesting that the claimant's anxiety causes any more than minimal functional limitations that would affect her ability to perform basic work related activities," and, thus, concluded that Robinson did not suffer from a severe mental impairment. (R. 13). In reaching this decision, the ALJ considered Robinson's mental condition and found that it causes no more than mild limitations in her activities of daily living:

> [Robinson] is still able to care for her two minor children, ages four and ten. She prepares meals on a daily basis for her children, readies her ten-year old son for school, places him on the school bus, and then spends the rest of her day carrying for her four-year-old daughter.
>
> She works with her son with his homework, and then prepares dinner for her family. She has no problems with her ability to care for personal care. She performs the housework, such as cleaning, ironing and doing the laundry. She can drive a vehicle . . . She independently shops for clothes for her children and groceries for her household . . . In a word, [Robinson] does perform a full and complete day of activities and care.

(R. 15). The ALJ considered Robinson's social activities, which included talking to her mother on the phone daily and occasionally attending church, and found that

these activities demonstrate no more than mild limitations in social functioning. (R. 15, 152). Indeed, Robinson's mother confirmed that Robinson attended church "once or twice a month," (R. 144), and that Robinson shops in stores for "food, clothing, and household items." (R. 143). Substantial evidence supports an ALJ's finding of no severe mental impairments when, as here, the claimant "could carry out many daily living activities, such as preparing food, shopping, and carrying for [herself]" and also "[the claimant's] social functioning was not severely impacted by [her] depression as [s]he was able to attend church, have visitors, and socialize with [her] family by telephone." *Cuthbert v. Astrue*, 303 F. App'x 697, 699 (11th Cir. 2008). Finally, the ALJ considered the findings of the state agency medical consultant, who found no episodes of decompensation and expressed an opinion consistent with the findings of Robinson's treating physicians, indicating that Robinson had no difficulties in maintaining concentration persistence, or pace. (R. 303).

Ultimately, the ALJ properly considered Robinson's mental impairments consistent with the law, and set forth multiple reasons, all of which are supported by substantial evidence for finding Robinson had no severe mental impairments. Consequently, the court finds the ALJ committed no error.

## VI. Conclusion

Based on the foregoing, this court concludes that the ALJ's determination that Robinson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is AFFIRMED. The court will enter a separate order to that effect simultaneously.

**DONE** the 29th day of September, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE